# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Amber J.,**
**Respondent Below, Petitioner**

**vs) No. 16-0289** (Kanawha County 15-D-814)

**Shannon J.,**
**Petitioner Below, Respondent**

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Amber J.[1], by counsel Mark W. Kelley, appeals the Circuit Court of Kanawha County's February 23, 2016, order validating the parties' postnuptial agreement. Respondent Shannon J., by counsel Allyson E. Hilliard, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in reversing the decision of the Family Court of Kanawha County invalidating the parties' postnuptial agreement.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2008, the parties were married. Subsequently, in April of 2008, respondent sustained severe injuries in a workplace accident.[2] Following the accident, the parties filed a civil law suit against respondent's employer, All Crane & Equipment Rental Corporation.

In June of 2011, in anticipation of a settlement, the parties entered into a postnuptial agreement to divide any settlement proceeds. Attorney Scott Kaminsky drafted the agreement for both parties. The parties met with Mr. Kaminsky on two occasions; once to draft the agreement

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2] Respondent sustained a broken forearm, shoulder, collarbone, three broken ribs, three broken vertebras, two broken femurs, a crushed ankle, and punctured lungs. As a result of his injuries, respondent is permanently disabled.

and once to review and sign the agreement. Ultimately, the personal injury case settled for $2,365,000 and the parties received approximately $1,800,000.

In June of 2015, petitioner filed for divorce. The family court held an evidentiary hearing in October of 2015 on the sole issue of the validity of postnuptial agreement. At the hearing, several witnesses testified regarding the validity of the parties' postnuptial agreement, including the parties and Mr. Kaminsky.[3] The parties each testified that they jointly desired to enter into a legally-binding agreement in regard to distribution of the funds received by petitioner in correlation to the sums received by respondent from his injuries. The parties also testified that they were referred to Mr. Kaminsky to prepare an agreement outlining the terms previously agreed to by the parties. Mr. Kaminsky testified that he did not provide legal counsel to either party but advised them of their right to obtain independent counsel to review the agreement. He also testified that he did not represent either party in the preparation of a legally-binding agreement and that no financial statements were prepared or exchanged in relation to the agreement. By final order entered on October 7, 2015, the family court held that the postnuptial agreement was invalid, and found that the parties' representation by Mr. Kaminsky was contrary to West Virginia law, and that the parties did not exchange any financial disclosures in relation to the "assets and liabilities . . . which they intended to preserve."

In November of 2015, respondent appealed to the circuit court. Petitioner filed a motion to dismiss respondent's petition for appeal. The circuit court held a hearing and thereafter entered an order denying petitioner's motion to dismiss. Following a hearing on petitioner's appeal, the circuit court entered a final order on February 23, 2016. The circuit court found that the family court misapplied West Virginia law to the relevant facts, reversed the family court's ruling, and directed the family court to "completely enforce" the parties' postnuptial agreement. This appeal followed.

Our standard for reviewing a circuit court order in a family court matter was set forth in the syllabus of *Carr v. Hancock,* 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

With this standard in mind, we review the circuit court and family court orders.

Petitioner argues that the circuit court erred in reversing the family court's decision to invalidate the parties' postnuptial agreement. Specifically, she argues that because the parties were represented by the same attorney, the postnuptial agreement is void. Petitioner further argues that the parties' postnuptial agreement is per se invalid because "one attorney may not

---

[3]According to the record on appeal, the parties' recorded testimony from this hearing is not available for unknown reasons.

represent, nor purport to counsel, both parties to a prenuptial agreement." Syl. Pt. 4, *Ware v. Ware*, 224 W.Va. 599, 687 S.E.2d 382 (2009).[4] We note, however, that "no state [including West Virginia] has instituted a *per se* rule requiring that parties to a prenuptial agreement must always obtain independent counsel." *Id.* at 607, 687 S.E.2d at 390. While petitioner argues that the "law is crystal clear" that Mr. Kaminsky's role as counsel for the parties was improper and, thus, the postnuptial agreement was void, our previous holding in *Ware* has established otherwise. According to our holding in *Ware*,

> [t]he validity of a prenuptial agreement is dependent upon its valid procurement, which requires its having been executed voluntarily, with knowledge of its content and legal effect, under circumstances free of fraud, duress, or misrepresentation; however, although advice of independent counsel at the time parties enter into a prenuptial agreement helps demonstrate that there has been no fraud, duress or misrepresentation, and that the agreement was entered into knowledgeably and voluntarily, such independent advice of counsel is not a prerequisite to enforceability when the terms of the agreement are understandable to a reasonably intelligent adult and both parties have had the *opportunity* to consult with independent counsel

*Id.* at 601, 687 S.E.2d at 384, Syl. Pt. 2. (emphasis added).

In this case, we conclude that the parties' postnuptial agreement is valid and enforceable. It is clear from the record on appeal that the parties signed the instant postnuptial agreement in 2011. Both parties later testified that the agreement was not obtained by fraud, duress, or other unconscionable conduct. Petitioner testified that each party was advised by Mr. Kaminsky of their right to obtain independent counsel and that she voluntarily chose not to obtain independent counsel. Additionally, respondent and Mr. Kaminsky both testified that petitioner was the party "who wanted the postnuptial agreement" and was not "forced into making the agreement." The parties and Mr. Kaminsky all testified that Mr. Kaminsky was not hired to represent the parties in the formation of the postnuptial agreement, but rather Mr. Kaminsky was hired to draft the agreement because the parties previously agreed upon an allocation of respondent's settlement proceeds in the event they divorced. Upon our review, the circuit court did not err in reversing the family court's decision.

Petitioner also argues that the parties' postnuptial agreement fails for lack of the provision of filing any financial disclosures. Petitioner asserts that this Court has "repeatedly

---

[4]This Court has previously established that prenuptial and postnuptial agreements are governed by the same case law and statutes. *See Morris v. Morris*, No. 13-0742, 2014 WL 1272517 (W.Va. March 28, 2014) (memorandum decision) (invalidating a postnuptial agreement based on misleading financial disclosures and establishing principles for determining the validity of postnuptial agreements); *Truman-Gilmore v. Gilmore*, No. 14-0194, 2015 WL 2261665 (W.Va. May 13, 2015) (memorandum decision) (invalidating a prenuptial agreement due to failure to disclose financial assets and citing to the *Morris* case and the principles for determining the validity of a postnuptial agreement).

held" both prenuptial and postnuptial agreements to be invalid because of a lack of or misleading financial disclosures. In support of her contention, petitioner relies on our holding in *Truman-Gilmore v. Gilmore* No. 14-0194, 2015 WL 2261665 (W.Va. May 13, 2015) (memorandum decision) wherein we held that a premarital agreement was not a valid means of distributing the parties' property in their divorce because the agreement misrepresented the character and value of their property. Contrary to petitioner's contention, the facts of her case are inapposite to those in *Truman*. In this case the parties jointly mediated, negotiated, and settled their tort claims resulting from respondent's workplace accident and resulting injuries. As the circuit court recognized in its order, the parties had the "same level of knowledge and participation" in the settlement process. The record on appeal reflects that there was no evidence of any misrepresentation of the value or character of the property that was the subject of the parties' postnuptial agreement. The only property addressed in the postnuptial agreement is the settlement proceeds and the agreement is very specific and confined to the specific settlement amount received from respondent's personal injury claim and petitioner's loss of consortium claim. Further, West Virginia Code § 48-7-102 governs the validity of postnuptial agreements and

> permits parties to a divorce action to enter into a separation agreement to effectuate a distribution of their property as a result of their impending divorce: In cases where the parties to an action commenced under the provisions of this chapter have executed a separation agreement, then the court shall divide the marital property in accordance with the terms of the agreement, unless the court finds: That the agreement was obtained by fraud, duress or other unconscionable conduct by one of the parties; or That the parties, in the separation agreement, have not expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings; or That the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed.

As such, we find no error in the circuit court's order reversing the family court's decision invalidating the parties' postnuptial agreement.

Petitioner next argues that the circuit court erred in considering respondent's appeal because the family court's order was an interlocutory order. Petitioner contends that the family court order was erroneously labeled as a "final order" because the order dealt only with the validity of the postnuptial agreement and not the entirety of the parties' divorce. Petitioner also contends that respondent's appeal "lacks a final, appealable order" which, according to her, precluded the circuit court's jurisdiction pursuant to West Virginia § 51-2A-11(a).[5] After a thorough review of the record, we disagree.

---

[5]West Virginia § 51-2A-11(a) provides that

(continued . . . )

4

The record on appeal reflects that the family court entered a "Final Order Regarding Antenuptial Agreement" in October of 2015. It is also clear from the record that the family court plainly labeled the order as a final order and included language notifying both parties that the family court considered the order a final order pursuant to Rule 22(c) of the Rules of Practice and Procedure for Family Court.[6] It is clear that the family court notified both parties that the order was indeed a final order that could be appealed to the circuit court, as respondent did, or to this Court. While petitioner is correct that the order regarding the parties' postnuptial agreement was not the last order regarding the parties' divorce, it is, nonetheless, a final order. The family court's order disposed of the litigation as to the validity of the parties' postnuptial agreement. The rest of the parties' divorce proceeding could not proceed without the family court's determination regarding the postnuptial agreement because, according to the record on appeal, the parties disputed what was marital and separate property. Respondent filed a timely appeal with the circuit court from the family court's final order. As such, the circuit court did not err in considering respondent's appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 23, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017

---

[w]ithin thirty days following the entry of a final order of a family court judge or the entry of a final order of any senior status circuit judge, circuit judge or other judicial officer appointed to serve pursuant to the provisions of section nineteen of this article, any party may file a petition for appeal with the circuit court. No appeal may be had under the provisions of this article from any order of a family court judge or from any order of another judicial officer temporarily serving as a family court judge other than a final order.

[6] Rule 22(c) of the Rules of Practice and Procedure for Family Court provides that

[a] family court final order shall contain language explicitly informing the parties (1) that it is a final order; (2) that any party aggrieved by the final order may take an appeal either to the circuit court or directly to the supreme court of appeals; (3) that a petition for appeal to the circuit court may be filed by either party within thirty days after entry of the final order; and (4) that in order to appeal directly to the supreme court both parties must file, either jointly or separately within fourteen days after entry of the final order, a joint notice of intent to appeal and waiver of right to appeal to circuit court.

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker